No. 43,447

VERNON J. OCHS, *Appellant*, v. G. T. BLANKENSHIP, et al., *Appellees*.

(388 P. 2d 626)

Opinion filed January 25, 1964.

*Harry E. Robbins, Jr.*, of Wichita, and *Jack E. Dalton*, of Jetmore, argued the cause, and *Lyndon Gamelson* and *Donald C. Tinker, Jr.*, both of Wichita, were with them on the briefs for the appellant.

*Wayne B. Snow*, of Oklahoma City, Oklahoma, argued the cause, and *Paul B. Watson*, of Jetmore, was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by the plaintiff from the orders and judgment of the trial court that certain instruments, a contract and two instruments designated as "Sale of Oil and Gas Royalty," were recorded in compliance with G. S. 1949, 79-420, quieting title of the Mid-American Oil Company and the Gulf Coast Western Oil Company, as owners of an undivided 14/32 interest in the minerals in place in and under the following real estate: "The South Half (S/2) of Section 26 Township 23 South, Range 26 West of the

Sixth Principal Meridian, Hodgeman County, Kansas, . . ." and finally, from the order overruling plaintiff's motion for new trial.

The parties stipulated that Gulf Coast and Mid-American were both Delaware corporations and were successors to the Farmers Mutual Royalty Snydicate and Equal Royalty Company, respectively. Mid-American claimed a 13/32 undivided interest and Gulf Coast claimed a 1/32 undivided interest in the minerals in place. The court had jurisdiction and the petition stated a cause of action against the defendants. As to the southeast quarter Preston M. Steele and Harry B. Steele and their wives gave a general warranty deed to Francis E. Ochs on September 12, 1916, and on December 25, 1933, Francis and his wife, plaintiff's father and mother, gave to plaintiff a general warranty deed therefor which was recorded on June 1, 1937.

As to the southwest quarter, H. J. Steele and wife gave a general warranty deed to Francis E. Ochs which was recorded on June 25, 1904. Francis died testate on August 30, 1954, with title to this quarter section assigned to Stella I. Ochs, surviving spouse of Francis, who transferred title to plaintiff by quit claim deed recorded March 21, 1956, as a gift.

It was further stipulated that defendants claimed title as a result of the following transactions:

On January 23, 1929, Francis and Stella Ochs contracted and agreed to convey to G. T. Blankenship an undivided ⅝ interest in the minerals in and under the real property here involved and an undivided ⅝ interest to the Equal Royalty Company, or *some other company of a suitable name to be organized.* On May 3, 1929, the two mineral deeds set out in and dated the same date as the contract were recorded. On May 12, 1937, Blankenship and his wife conveyed an undivided 1/32 interest by mineral deed recorded May 26, 1937, to the Equal Royalty Company. On March 31, 1934, Blankenship had conveyed an undivided 1/32 interest by mineral deed, recorded December 9, 1937, to the Farmers Mutual Royalty Syndicate. At this point there is no dispute about the facts.

The stipulation then proceeded to show that plaintiff contended that defendants' title was void under G. S. 1949, 79-420 because their mineral deeds were not recorded within ninety days after execution and were not listed for taxation. Defendants admitted such deeds were not recorded within ninety days after their execu-

tion on January 23, 1929. In compliance with the terms thereof, the contract of January 23, 1929, and the mineral deeds were placed in escrow with the Spearman Abstract Company, a partnership, of Spearman, Texas, where they remained at least until March 5, 1929, which was less than ninety days from the date of their recording on May 3, 1929. Defendants claimed plaintiff was barred by our statute of limitations (G. S. 1949, 60-304) and that plaintiff was estopped from denying ownership because (1) such ownership was recognized by him in 1937 when he, Equal Royalty, Farmers Mutual, with others, as lessors, executed an oil and gas lease on the property here involved, (2) that plaintiff's attorney recognized the rights and ownership of these defendants in a letter dated March 20, 1957, to Mid-American, and (3) that Francis E. Ochs expressly reserved defendants' mineral interests in his deed to plaintiff. Both plaintiff and the defendants contended they were in possession of the mineral interests. The foregoing were the issues before the court.

It was also stipulated that defendant would introduce an affidavit of Blankenship executed on March 5, 1929, and recorded on March 6, 1929, and that identification of instruments duly recorded was to be waived and substitution of copies would be allowed but the right to object to the introduction of such instruments on the basis of their being incompetent, irrelevant, and immaterial was reserved. Orally, the parties stipulated that no transfers of mineral interests for tax purposes were recorded on this property from October 6, 1916, to June 1, 1937. The tax rolls of 1929 and 1930 showed no mineral interests listed for taxation on this real property. The entire fee title was assessed to Francis.

The instrument dated January 23, 1929, was denominated as follows:

"CONTRACT

"EMPLOYMENT FOR POOLING ROYALTY"

In pertinent part thereof Francis E. Ochs and Stella I. Ochs agreed to employ Blankenship to sell or pool oil and gas and mineral rights to the Equal Royalty Company or *to some other company of a suitable name to be organized,* and as full compensation for his services and full payment of *his part of the expenses while organizing the company* they agreed to convey to him an undivided ⅛ interest in the minerals in and under the land. Francis and Stella

further agreed to convey to the company by good and sufficient deed an undivided ⅞ interest in and to all the minerals lying or situated in and under the land. They agreed to accept as full payment for such conveyance shares in the company of the par value of $1.00 and "$10 per acre in shares at the par value for the number of acres covered by this contract."

Blankenship's contracts with other landowners were to have the same values applied. Landowners in Texas, Oklahoma, Kansas, Colorado, and New Mexico, were to be allowed to make similar contracts with Blankenship in the aggregate of not less than 4,000 acres or more than 80,000 acres of land. When all deeds were placed in escrow, then Blankenship was to organize the company *at his expense* and upon completion of the organization, the executed deeds to the company together with the contract were to be delivered to the company. Blankenship was to pay his own expenses until the company was organized but when it was completed and ready for business, such expenses were to come out of the ⅞ interest conveyed to the company. Francis and Stella were not to be liable in any respect whatsoever for any expenses in organizing or operating the company. After organization of the company, Blankenship could continue to pool royalties to the limit of 80,000 acres. The deed to Blankenship, as well as the deed to the company, was directed to be placed in escrow in the Spearman Abstract Company at Spearman, Texas. If the company name, Equal Royalty Company, was not available, Francis and Stella agreed to execute "another deed in the name of such Company as may be organized" under the employment contract. Time was the essence of the contract and if 4,000 acres or more had not been procured and the company organized on or before December 1, 1929, the contract would be null and void. The contract was binding on the parties, their heirs, executors, administrators and assigns.

Pursuant to the contract, two written instruments were executed by Francis and Stella which were denominated "Sale of Oil and Gas Royalty." Both were mineral deeds. The first conveyed to the Equal Royalty Company an undivided ⅞ interest in all of the oil, gas, coal, and other minerals lying in or under the land in question, and the second conveyed to Blankenship an undivided ⅛ interest in all of the oil, gas, coal, and other minerals lying in or under the same land. Thus these two instruments conveyed real property as mineral deeds and the main issue in the case arises as to when the ninety-day period required by G. S. 1949, 79-420,

began to run. Plaintiff contends the statute came into operation on January 23, 1929, the date of the contract and deeds. Defendants, on the other hand, contend that due to the escrow agreement and the duties placed upon Blankenship in forming the royalty pool, the statute did not commence to run until his duties were performed and the deeds released by the escrow holder.

After completion of the pool by Blankenship in full accordance with the contract, the Spearman Abstract Company delivered the deeds and the contract to the Equal Royalty Company and it is undisputed the deeds were recorded within ninety days thereafter.

An affidavit by Blankenship was filed of record on March 6, 1929, at 3:20 p. m. in the register of deed's office of Hodgeman county. The pertinent portions portions thereof reflect that a number of landowners had employed Blankenship to pool royalties under certain lands and to compensate him for his services, he was to receive certain interests therein. The deeds to such interests were placed in escrow pursuant to the employment contracts. Although approximately thirty-three quarter sections of land were pooled, our concern here is only with the land in question.

Blankenship received the contract and the deeds on January 23, 1929, from Francis and Stella Ochs. On February 9, 1929, the Spearman Abstract Company of Spearman, Texas, issued its receipt therefor to Blankenship, whose office was in the Petroleum Building, Oklahoma City, Oklahoma, in which receipt it was stated, ". . . mineral Deeds to be held for the following named persons together in escrow until the stipulations in said contracts are fulfilled." The contracts, or a copy thereof, were attached to each deed.

With respect to the Spearman receipt, it is not disputed that Blankenship did so place in escrow the contract and both deeds covering the land in question. On April 17, 1929, Francis and Stella received certificate No. 36 for 1200 shares in the company.

The only oral testimony was that of M. L. McLain, who was co-owner and manager of the Spearman Abstract Company. From McLain's testimony concerning his business operations with Blankenship, plaintiff seems to infer there was an opportunity for Blankenship and McLain to be guilty of some malfeasance or misfeasance. However, the evidence before us shows nothing to support such a contention. We cannot speculate on pure conjecture.

The record discloses two instruments were subsequently executed from which transactions plaintiff could not have been unaware of

the legal existence of the mineral deeds. This first was a general warranty deed dated December 25, 1933, by which Francis and Stella conveyed to plaintiff the land in question with the following exception:

"This deed is made subject to terms and conditions of certain mineral deeds now on record in favor of G. T. Blankenship, Equal Royalty Company and Dean M. Stacy, and all rights accrued or accruing thereunder in favor of the grantors herein are hereby assigned to the grantee herein, his heirs or assigns."

The second instrument was an oil and gas lease executed to Richard E. Garrett on April 15, 1937, by plaintiff and his wife, Equal Royalty Company, Farmers Mutual Royalty Syndicate, Incorporated, Dean M. Stacy, and Eva L. Stacy, as co-lessors.

The trial court briefly summarized the facts and in its formal journal entry of judgment stated:

"The court further finds that when said conditions were complied with by the grantee, then and only then, did said deeds become effective and subject to the provisions of what is now G. S. 1949, 79-420; that said conditions were fulfilled within 90 days before said deeds were recorded."

The court quieted title in Mid-American to a 13/32 interest and in Gulf Coast to a 1/32 interest in the minerals in and under the land in question. In due time plaintiff filed a motion for new trial which was overruled. Hence this appeal.

G. S. 1949, 79-420, in substance, provides that where the fee to the surface of land is in one person and the right or title to any minerals therein is in another, the right to the minerals shall be separately taxed to the owner, or owners thereof. The register of deeds has the duty to furnish to the county clerk (now to the county assessor, G. S. 1961 Supp., 79-420) a certified description of all such reserves. That portion of the statute with which we are presently concerned states: *"Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

In *Mining Co. v Crawford County,* 71 Kan. 276, 80 Pac. 601, the above statute was construed to be a part of the general tax law and in the discussion it was stated that tax laws are the growth of experience and the development of property, and that changes in laws from time to time by amendments, repeals, alterations, or additions, as new conditions require, must be made in order that all classes of property will bear a just proportion of the public burden. Absent the above-quoted provision a very large and highly valuable class of real estate could escape taxation. (p. 278.)

An authority relied upon by both parties is *Burgin v. Newman,* 160 Kan. 592, 164 P. 2d 119, wherein the same statute was again referred to as a tax statute and its purpose was stated thus:

"The provisions of G. S. 1935, 79-420, a tax statute, construed and *held:* The purpose thereof was to provide for the separate listing, valuation and taxation of mineral interests in lands when severed from the fee to the surface of the land and owned by another or others." (Syl. ¶ 1.)

In the Burgin case the mineral deed conveying ½ interest in the minerals in place was executed by the Burgins, husband and wife, to the defendants, Newman and Trock. By reason of a subsequent transfer by the Burgins, the question presented in the appeal was whether the grantees' failure to list the deed for taxation under 79-420 made the grantees' deed void. Newman had originally conveyed to Burgin but neglected to reserve title to the minerals in place and the Burgins by their mineral deed had conveyed back the minerals in place to Newman. Burgins' deed to Newman was executed July 11, 1936, in the bank and the bank became escrow holder until a certain mortgage extension agreement was consummated and recorded. Trock was an officer of the escrow bank. The mortgage extension agreement was recorded on April 8, 1937, and the mineral deed was recorded on June 17, 1937. On the point of plaintiff's contention the deed was delivered to the grantees on the day it was executed, July 11, 1936, this court stated:

"Before a deed can operate as a valid transfer of title it must be delivered. Delivery is largely a matter of the grantor's intention to divest himself of title." (Syl. ¶ 2.)

The opinion further stated that delivery may be presumed when,

"Possession by a grantee of a deed absolute in form is prima facie evidence of delivery which can be overthrown only by clear and convincing evidence and the burden of showing nondelivery is upon the party who questions the delivery." (Syl. ¶ 3.)

Further qualifying delivery of a mineral deed, the opinion held:

"The failure of grantees in a mineral deed to record it within ninety days after execution, or to list the mineral interests conveyed for taxation, does not render the deed void where custody and control thereof are given to a bank and delivery is withheld for the benefit of the grantors, pursuant to agreement of the parties, until the occurrence of a designated event and not for the purpose of avoiding taxation." (Syl. ¶ 4.)

The opinion in the Burgin case includes the following clear and unequivocal statement as to the application of 79-420:

"Manifestly . . . the mere execution of a mineral deed does not constitute a severance of the surface and mineral rights nor does it create a separa-

tion in the ownership of such interests so that they can be listed, valued and taxed separately. Such severance of interests and passing of title do not occur until delivery of the instrument to the grantee." (pp. 595, 596.)

In the Burgin opinion the situation was summarized by this court to be one where the parties had orally agreed there would be no severance of the surface and the mineral rights until the renewal mortgage was recorded and such construction had been placed upon the agreement by all parties. The bank held the mineral deed until the contractual contingency occurred and the deed was recorded less than ninety days from its intended delivery. All that was needed was to determine the effect intended and what was *actually done*. The parties had agreed upon their course of conduct and the result to be achieved. They acted in mutual good faith and avoidance of taxation was in nowise considered. The trial court was satisfied defendants' evidence convincingly met the burden of proof.

We cannot ignore the rulings of the Burgin case and under our present facts, where the escrow agreement was in writing, we believe this is a much stronger case than the Burgin case where the escrow agreement was oral. We are convinced the mineral deeds executed to Blankenship and the company were conditionally delivered to him to be placed in escrow until he could perfect the pooling arrangement and the organization of the company. From his actions Blankenship also placed this interpretation on the delivery of January 23, 1929, because he immediately deposited the deeds and contract in escrow. We are further convinced that plaintiff's grantors and the plaintiff also construed the contract and the deeds as constituting a conditional delivery. Thus the recording of the deeds at a time within ninety days of the release thereof by the escrow holder did not violate G. S. 1949, 79-420.

The foregoing is the principal question before us and we do not deem it necessary to discuss other propositions argued by counsel and authorities cited in support thereof. We may say that various problems relating to royalty pooling contracts have previously been considered by our court. A few of our cases are *Fitch v. United Royalty Co.*, 143 Kan. 486, 55 P. 2d 409; *Johnson v. Allen*, 178 Kan. 348, 285 P. 2d 764; *Fox v. Flag Oil Corporation*, 179 Kan. 781, 298 P. 2d 260; *State, ex rel., v. United Royalty Co.*, 188 Kan. 443, 363 P. 2d 397.

The judgment is affirmed.

JACKSON, J., not participating.